Good morning and may it please the court. My name is Joshua Jones with Federal Defenders of San Diego I'm here today on behalf of my client Samuel Frias-Flores After the Supreme Court's decision in Carceri-Rosendo, I think that the issues in this case can be resolved Looking to language that's been cited in many 132060 appeals that this court has decided already essentially that language says that an immigration judge has the duty to advise a Correspondent of their eligibility for relief and to provide them with an opportunity to develop the issue That language has appeared in numerous decisions of this court just to name a few Arrieta Ortiz Lopez Lopez Rodriguez The statements made by the immigration judge in this case Each of the parties has attempted to give the statement their own interpretation or their own gloss but I think that regardless of what interpretation you give the statements of the immigration judge at the Deportation proceeding we result in a due process violation Specifically the IJ advised Mr. Frias-Flores that he would deny voluntary departure because of his convictions and make a decision that he be removed and deported to Mexico It's our position that when the IJ referred to voluntary departure he was There are two possibilities one that he believed that Mr. Frias-Flores had been convicted of an aggravated felony as the state of the law at that time is unclear regarding whether two possessions constitute an aggravated felony in which case he wouldn't be eligible for either time of either type of voluntary departure and it would Be denied as a matter of law in which case that would be a due process violation The other option would be that he was referring to post-inclusion voluntary departure And I think that can be indicated by the fact that at the initial General call calling the hearing the immigration judge tells the respondents that he will consider them for voluntary departure if they have the resources to Depart the country on their own The BIA and in Ray Arguez-Campos indicated that for pre-conclusion voluntary departure an alien need not show that he has the financial means to depart The United States. I think that's an indication that the IJ in this case was referring to post-conclusion voluntary departure Which Mr. Frias-Flores we acknowledge would not have been statutorily eligible for as he would not have met the moral character requirement But what that would mean is that he was not advised of pre-conclusion voluntary departure Which he was eligible for as a matter of law and had a plausible claim to. Now the government's contention is that the Immigration judge in this case was in fact referring to both pre-conclusion and post-conclusion voluntary departure However, even if we were to give the immigration judge's statements that interpretation Which I think is contrary to reasonable inferences from the record I think we would still arrive at a due process violation in this case The reason for that is the fact that the immigration judge made no inquiry and provided no opportunity whatsoever to develop the issue. Basic fundamental tenets of due process say that The two basic requirements are notice and an opportunity to be heard. If we construe the immigration judge's statements as a reference to pre-conclusion Voluntary departure, we're still missing the second part, an opportunity to be heard. In this case the immigration judge did not even ask Mr. Pre-conclusion voluntary departure, let alone allow him to develop the positive equities that would That would inform a judge's decision to discretionary decision whether or not to grant voluntary departure This was a Mass hearing, is that right? That's correct. It began as a mass hearing. How many people were there that morning? Do you remember? I don't remember exactly I'm certain that it was more than ten people. This is my recollection of listening to the deportation proceeding However, the portion in which Mr. Frias, the immigration judge is addressing Mr. Frias for specifically is when he states that he Will deny voluntary departure and does not even inquire of Mr. Frias for us whether he has anything to present or any statements that he wishes to make with regard to that inquiry Now that would make sense under our interpretation because the immigration judge would either have believed that he was not eligible because he had an aggravated felony Or he's not eligible because he couldn't meet the moral character requirements If we were to give it the interpretation that the government is urging in this case That would mean that the immigration judge believes that he's eligible for this form of release But it's explicitly denying him the opportunity to be heard on whether or not that really should be granted As this court noted in Campos-Granillo, the IJ is required to weigh favorable and unfavorable You know characteristics or factors that are present in making these discretionary determinations The fact that the IJ didn't do that in this case tends to show that he was not attempting to exercise discretion But in fact thought that Mr. Frias-Flores was statutorily barred from the form of relief that he was indicating The government's second contention in this matter is that Mr. Frias-Flores was not Prejudiced by the due process violation if the court were to find that there were a due process violation I think the record is clear here that Mr. Frias-Flores Would have had a plausible claim, a plausible claim to have a Preconclusion voluntary departure granted. Now there's no disputing that Mr. Frias-Flores did have criminal convictions The government urges this court to apply What they refer to as the heightened equity standard that a person would have to show Outstanding equities in order to receive relief. However, I think that the case law regarding that standard is somewhat Inconsistent and I think the court most clearly addressed it In a case called L. Ramley, forgive my pronunciation, versus INS. And in that case the court took pains to note that just because there's this heightened standard that can apply It does not relieve the court of balancing to determine what the person's specific criminal conduct is and then weighing it against the positive equities and In this case Mr. Frias-Flores' convictions while there are several of them are all related to simple possession or traffic related Offenses. Now the government indicates that a single possession conviction could constitute something that would Rise the or increase the standard that is required. However, I think that's inconsistent. In L. Ramley versus INS this court noted that in response to an inquiry that was made by the Sixth Circuit The BIA indicated that their idea of a serious drug trafficking offense would be trafficking which would constitute an aggravated felony Under the immigration law. Now in this case It's been essentially conceded that Mr. Frias-Flores' conviction is not an aggravated felony And thus we don't think that it would that an IJ would be likely to Apply this heightened equity standard with regard to Mr. Frias-Flores. The Also this court and the BIA have found actually found outstanding equities in many cases that would be similar to Mr. Frias-Flores' case because of his Outstanding ties to the United States. He came to the United States when he was three years old, lived here for 33 years Had ten United States citizen children a United States citizen wife and before the district court at the time of the deportation proceeding He had 23 handwritten letters from Mr. Frias-Flores' friends, his wife, his children, all noting how much he contributed to the family and how much of a hardship it would be For him to be removed from the United States, you know in Both in Matter of Buscemi and Matter of Edwards the BIA found that people who had similar actually I would say significantly less equities than Mr. Frias-Flores were able to even meet this higher standard Which I don't even think is quite appropriate to apply in this case But in those cases the BIA found that 17 years of residence in the country since the age of nine was an outstanding equity In Matter of Edwards they found that 22 years in the United States and four United States Children, United States citizen children were an outstanding equity So I think Mr. Frias-Flores' case is even stronger than those in BIA cases that have found outstanding equities Moreover in the cases that have applied that heightened equity standard We've been talking about much more serious convictions in Matter of Buscemi We were talking about a person who had a drug trafficking conviction and a robbery conviction that involved two Firearms and a person being tied up during the course of the robbery That person and that individual received three and a sentence of three and a half to seven years Mr. Frias-Flores' longest sentence was 16 months and that was the only sentence he received that was over a year And it was for a simple possession conviction Similarly in Matter of Edwards the person had three drug trafficking convictions and three burglary convictions and was sentenced to five years So I think Mr. Frias-Flores' situation is significantly different from those In cases where this heightened equity standard has been applied and even in the cases where it has been applied Mr. Frias-Flores' equities are Significantly greater and would warrant that a court could conclude not that he would have received relief But that merely it's plausible which is the standard here for those reasons We would ask that you reverse the conviction and demand with instructions to dismiss. Mr. Jones Was the appellant represented by counsel at that immigration hearing? No, he was not. And did he admit During the proceedings that he had the prior? He did admit. He did admit that he had the prior. That's correct. Thank you Good morning, Sarah O'Connell for the United States. I have two main points your honors Respectfully, I don't believe this court has jurisdiction to review the exercise of discretion that the immigration judge made in the underlying matter and second even if a Typical Standard and rather than a heightened standard of equities applies to the defendant The district court had it right when they said there was no plausible way he would have Succeeded on this claim even if the immigration judge had Allowed the defendant to more fully develop the record about the fact that he had Ten children whom he was supposedly supporting in between the time he was serving on the 16 convictions that he earned during the past eight years All of his convictions would have outweighed his family ties to the United States Is that exactly the question I mean aren't we simply to ask whether he has a plausible claim I Mean, I don't think there's any way the guy's gonna win That's not in which my question is my position is not does he have a Plausible claim given what is it 10 u.s. Citizen children u.s. Citizen spouse siblings parents legal residents, whatever decent Record of supporting the family First I'm not certain those are the facts. I don't believe there is a decent record that he was supporting his family and Second no, I don't think that there was a plausible claim nor did the district court and third there can be no due process violation where Discretionary relief like voluntary departure is denied in any case But the question but the question here is whether is whether he was even given an opportunity to apply for Pre-conclusion voluntary departure. Well, the immigration judge did tell him that I will consider you for voluntary departure He did not specify which type of voluntary departure, but that was after he had already determined that he was deportable No, that's not that's what he said to the immigration judge said this to the entire to the entire to the entire array He said I will come to each person I will consider you for voluntary departure, but I will deny you if I find that you have a bad criminal record Then when the defendant individually was before the immigration judge the judge considered his convictions He asked him about his length of residence in the United States. He Asked him specifically about the possession of methamphetamine Conviction he told the defendant that he could be removed for his drug convictions And then he told him well, I will deny you voluntary departure because of your convictions in the plural So he exercised his discretion to deny voluntary departure how It's very tough for me to look back on this and see any exercise of discretion. I'm gonna see the result But you're basically asking us to assume that a decision without any reasoning Is an exercise of discretion rather than just a arbitrary call the immigration judge considered the defendants conviction history and The residents in the United States and balanced those equities. I Don't see anything in here that suggests that the IJ was even aware of that his Wife was the citizen we had the ten kids how long he had been here what his work history was or anything else other than The fact of the convictions he did ask the defendant when he arrived in the United States So he was aware of the length, right? I just doesn't seem to me to be the most compelling fact the most compelling fact here that that that might cause somebody to Hesitate here is the fact that he had 10 u.s. Citizen children who were prepared to write letters and say this our dad's been a good dad. He's had some struggles, but We're gonna be this is gonna be a problem for us The kids ranged in age from what 2 to 22 at the time they wrote the letters It's true that the immigration judge did not ask the defendant about his Immediate family ties. He asked about his parental family ties and if his parents lived in the United States, however given the defendants criminal history I think the district court had it right when he said look at all the time that the Defendant has spent in prison during the past eight years. He was not supporting his ten children That would not have outweighed Conviction history in a balancing of the equity as I recall the conviction history Actually covered a fairly short span of years In other words get a lot of hit a lot of arrests in a fair in a five or six year Right. So so we only had a six-year span. What happened? What's the record say about his history before 2002? I'm not aware of any convictions before 2000. What about his work history? The defendant submitted some Social Security Statements showing that During that eight years period of time during at least two of those years. He did not receive any income at all Most likely because he was in prison during one. I'm sorry during which during which period? during Between 2000 and 2008. Okay. I want to know about pre-2000. What's his work history before that? I do not know We have anything. There's nothing in the record. There's nothing in the record, okay However, during the time between his first conviction and his deportation Which would be the year 2000 and 2008 during at least two of those years the defendant reported no income During one year. He reported $5,000 in income in total and during four years. He reported $13,000 in income in total or less So I think the district court was right when he said the defendants claim that he was supporting ten children Would fail when compared with the conviction history If the court has no further questions, I don't think so. Thank you I Was just briefly as I've seen my time is going to expire I would refer the court to ER page 17 if that's where the Social Security records are. They do indicate an earnings record from before 2000 and you know in 2002 and $23,000 in 2001 here and $12,000 and it goes on We don't contend that. Mr. Frears Flores was an affluent man He certainly was struggling to help provide for his family But I think the letters and the records show that it's possible It's plausible that he could receive voluntary departure as he's a man who was in the United States working and trying to support a family And that he has shown significant positive qualities. He simply is a drug addict
judges: Alarcon, Rymer, Bybee